UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MELISSA L. SPRY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Cause No. 3:20-CV-742-RLM-MGG |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| *Defendant* | ) | |

## ORDER AND OPINION

Melissa Spry seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court took the appeal under advisement following a telephonic hearing on January 10, 2022, and for the following reasons REVERSES the Commissioner's decision and REMANDS for further proceedings.

I. BACKGROUND

Ms. Spry suffers from several physical and mental impairments that affect her ability to work. She applied for disability insurance benefits in August 2018, alleging that her disability began in June 2017. Ms. Spry's claim was denied initially and on reconsideration. She attended an administrative hearing on October 28, 2019, where she and a vocational expert testified.

The ALJ issued an unfavorable decision to Ms. Spry on November 20, 2019. The ALJ concluded that:

1. Ms. Spry met the insured status requirements of the Social Security Act through September 30, 2022.

2. Ms. Spry hadn't engaged in substantial gainful activity since June 29, 2017, the alleged onset date. 20 C.F.R. § 404.1571 *et seq.*

3. Ms. Spry had the following severe impairments: degenerative and discogenic changes in the lumbar spine (status post L4-5 decompression and fusion surgery), obesity, persistent/major depressive disorder with anxious distress, and posttraumatic stress disorder. 20 C.F.R. § 404.1520(c).

4. Ms. Spry's impairments weren't severe enough, either singularly or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).

5. Ms. Spry has the residual functional capacity to perform sedentary work except that she is never able to climb ladders, ropes, or scaffolds and she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid unprotected heights, dangerous moving machinery, and wet, slippery, or dangerous terrain. She can understand, remember, and carry out simple, routine, and repetitive tasks with no production rate pace (like assembly-line work) and with only occasional, simple, work-related decision-making. She can also maintain attention and concentration for two-hour segments, and she can respond appropriately to occasional, predictable, routine changes in the workplace. She can further have brief and superficial interactions with supervisors (defined as occasional interaction with supervisors apart from what is necessary for general instruction, task completion, or training). She can also have brief and superficial interactions with coworkers, defined as occasional interaction with coworkers, and can have occasional interaction with the general public. She cannot perform tandem tasks.

6. Ms. Spry was unable to perform any past relevant work. 20 C.F.R. § 404.1565.

7.  Ms. Spry was a younger individual (thirty-nine years old) at the alleged onset date and her age didn't change as of the date of the ALJ's decision. 20 C.F.R. § 404.1563.

8.  Ms. Spry has at least a high school education and is able to communicate in English. 20 C.F.R. § 404.1564.

9.  Transferability of job skills isn't an issue because the Medical-Vocational Rules supported a finding that Ms. Spry wasn't disabled regardless of whether she has transferable job skills.

10. Considering Ms. Spry's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Spry can perform. The ALJ indicated that she considered the vocational expert's testimony that Ms. Spry would be able to perform the requirements of occupations such as: small parts assembler (106,100 job nationally), laminator (95,400 job nationally), and addressing clerk (75,000 positions nationally).

The ALJ concluded that Ms. Spry wasn't entitled to disability benefits because she wasn't disabled within the meaning of the Social Security Act. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II.   STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). A reviewing court doesn't decide whether a claimant is disabled, but evaluates whether substantial evidence supports the ALJ's decision that a claimant wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted). While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

### III.   DISCUSSION

Ms. Spry argues that the ALJ's decision isn't supported by substantial evidence because the ALJ improperly considered medical evidence and inadequately considered certain limitations. Specifically, Ms. Spy objects to how the ALJ considered (1) the state agency psychologist's opinion regarding checkbox limitations, (2) the state agency psychologist's opinion regarding interactions with others, (3) Dr. Nordstrom's consultative opinions, (4) Dr.

4

Garcia's consultative opinion, (5) Dr. Curry's opinion regarding use of a service dog, and (6) Ms. Spry's concentration-related limits.

Ms. Spry first argues that the ALJ erred by ignoring the checkbox limitations of Dr. Lovko, one of the state agency psychologists. Dr. Lovko assessed Ms. Spry's medical history in March 2019 and marked a checkbox indicating that Ms. Spry was "moderately limited" in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Dr. Lovko's narrative response, which was included in the same assessment, indicated that Ms. Spry could understand, carry out, and remember simple instructions, make judgments related to simple, repetitive tasks, respond appropriately to brief supervision and interactions with coworkers and work situations, and deal with changes in a routine work setting.

The ALJ developed a residual functional capacity that limited Ms. Spry to simple, routine, and repetitive tasks, limited her to maintaining attention and concentration for two-hour segments, limited Ms. Spry to brief and superficial interactions with others, and prohibited tandem tasks. The ALJ presented the residual functional capacity as a hypothetical to the vocational expert and the vocational expert opined that jobs were available for someone with that residual functional capacity. The vocational expert further testified, though, that competitive employment wouldn't be available to someone who's off task more than ten percent of the workday or who would miss more than one day of work per month.

5

Ms. Spry argues that the ALJ's decision is unsupported because the residual functional capacity and hypotheticals to the vocational expert don't address Dr. Lovko's checkbox limitations. According to Ms. Spry, the residual functional capacity includes limitations that might address other psychologically based limitations, but they don't address a moderate limitation in completing a workday or workweek without unreasonable interruptions or limitations in maintaining pace without unreasonable rest periods. She contends that these limitations are especially crucial given the vocational expert's testimony that the jobs available to someone like Ms. Spry wouldn't be available if the worker was off task more than ten percent of the time or missed more than one day of work per month.

The Commissioner responds that the ALJ's decision is supported even though the ALJ didn't directly address Dr. Lovko's checkbox opinion. The Commissioner concedes that the ALJ didn't explain why she ignored the checkbox limitation but argues that it's harmless error because Dr. Lovko didn't repeat or reiterate the checkbox limitation in the narrative portion of the assessment. The Commissioner characterizes the ALJ's decision as implicitly acknowledging these limitations in the residual functional capacity.

The ALJ didn't properly account for or explain Dr. Lovko's checkbox limitations, so remand is appropriate. When posing hypotheticals to a vocational expert, an ALJ must explicitly account for all limitations supported by medical evidence, unless the vocational expert has independently reviewed the medical record. DeCamp v. Berryhill, 916 F.3d 671, 675 (7th Cir. 2019); Moreno v.

6

Berryhill, 882 F.3d 722, 730 (7th Cir. 2018). Even if a medical source provides a narrative explanation and the ALJ relies on that explanation, the ALJ must still include other checkbox limitations in the residual functional capacity and hypotheticals. DeCamp v. Berryhill, 916 F.3d at 676. Dr. Lovko's checkbox limitation specifically indicated that Ms. Spry was moderately limited in completing a workday or workweek without psychologically based symptoms and in working at a consistent pace without an unreasonable number and length of rest periods. The residual functional capacity addresses similar limitations, such as limitations in concentration, but the ALJ didn't account for these limitations. Even if the ALJ implicitly acknowledged these limitations, that isn't enough when ALJs are required to explicitly account for all limitations. Id. at 675. The Commissioner's argument that any error was harmless doesn't square with the vocational expert's testimony about the unavailability of jobs to people who are off task more than ten percent of the time or who miss more than one day of work per month. Remand is appropriate so that the ALJ can reconsider Dr. Lovko's checkbox limitations and either include the limitations in the residual functional capacity and hypotheticals, or fully explain why it's proper to exclude Dr. Lovko's checkbox limitations.

## IV. CONCLUSION

Based on the foregoing analysis, the court concludes that the ALJ erred by not addressing Dr. Lovko's checkbox limitations or explaining why they were unsupported by medical evidence, which resulted in a final determination that

was unsupported by substantial evidence. The Commissioner's decision is therefore REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: <u>January 11, 2022</u>

<u>/s/ Robert L. Miller, Jr.</u><br>
Judge, United States District Court